UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

SERVICIOS AZUCAREROS
DE VENEZUELA, C.A. ET AL.                CIVIL ACTION

VERSUS                                   NO. 10-4443

JOHN DEERE THIBODAUX, INC.               SECTION "F"

ORDER AND REASONS

Before the Court is John Deere Thibodaux, Inc.'s motion to dismiss for failure to state a claim upon which relief can be granted.  For the reasons that follow, the motion is GRANTED in part and DENIED in part.

Background

This dispute arises out of an alleged breach of an oral contract.

Servicios Azucareros de Venezuela, C.A., a Venezuela corporation, and its president, Zvonimir Tolj, Sr., a citizen of Venezuela (collectively, "Servicios"), assert that Servicios had an oral contract with Cameco Industries, Inc., making Servicios the exclusive distributor of John Deere products in Venezuela. In 1996, Cameco changed its name to John Deere Thibodaux, Inc.

Although the contract was oral, Servicios contends that it was substantiated with various written instruments over the years.  Specifically, Servicios asserts that John Deere confirmed in writing to customers in Venezuela that its products were sold exclusively though Servicios, and that it informed other

1

companies to cease representing themselves as John Deere dealers based on Servicios's exclusive distributorship.  Servicios submits that through its efforts over the years, it successfully developed the Venezuelan market for John Deere products.

Under the contract, Servicios alleges, that it was entitled to receive, and did for many years, a 20% commission on all John Deere harvesters and tractors, and a 25% commission on spare parts, sold in Venezuela.  In 2006, Servicios contends that John Deere, using "economic duress", wrongfully reduced Servicios's commission from 20% to 10%; however, Servicios continued to sell and distribute John Deere products under the reduced commission rate.  Then in 2008, Servicios asserts, John Deere wrongfully terminated its contract.

Servicios sued John Deere in this Court on December 1, 2010, invoking the Court's diversity jurisdiction, and asserting claims under Louisiana and, alternatively Venezuela, law.  Under Louisiana law, Servicios seeks recovery of damages for breach of contract under Louisiana Civil Code articles 1983, 1966-67, 2013-14, and 2024, and, for commissions wrongfully withheld under Louisiana Revised Statutes sections 51:481-90; alternatively, Servicios claims unjust enrichment under article 2298.  Under Venezuelan law, Servicios asserts contract remedies pursuant to Venezuela Civil Code articles 1159, 1212, and 1264, unjust enrichment under article 1184, and moral damages under article

2

1196.  In sum, Servicios seeks over $1.5 million in damages.

On March 14, 2011, John Deere filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging that Servicios did not have standing to sue, and, even assuming that the standing requirement was met, Servicios's claims under Louisiana Revised Statute 51:481, the Louisiana Dealer Agreement Act, fail because the statute applies solely to Louisiana dealers.  The Court ordered supplemental briefing on (1) whether the plaintiff had prudential standing, and (2) whether Louisiana or Venezuela law governs plaintiff's claims.  On July 29, 2011, the Court granted John Deere's motion to dismiss finding that plaintiff did not have standing.  Servicios moved to reopen the case, which the Court denied on September 1, 2011.  Servicios appealed this Court's decision to the U.S. Court of Appeals for the Fifth Circuit.  On December 13, 2012, the Fifth Circuit, finding that Servicios had standing, vacated this Court's decision dismissing the complaint and remanded the case for further proceedings.  John Deere now moves to dismiss Servicios's complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### I. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted.  Such a motion is

rarely granted because it is viewed with disfavor. See <u>Lowrey v. Tex. A & M Univ. Sys.</u>, 117 F.3d 242, 247 (5th Cir. 1997) (quoting <u>Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.</u>, 677 F.2d 1045, 1050 (5th Cir. 1982)). In considering a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" See <u>Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit</u>, 369 F.3d 464 (5th Cir. 2004) (quoting <u>Jones v. Greninger</u>, 188 F.3d 322, 324 (5th Cir. 1999)). But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. <u>Kaiser</u>, 677 F.2d at 1050. Indeed, the Court must first identify allegations that are conclusory and, thus, not entitled to the assumption of truth. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79 (2009). A corollary: legal conclusions "must be supported by factual allegations." <u>Id.</u> at 678. Assuming the veracity of the well-pleaded factual allegations, the Court must then determine "whether they plausibly give rise to an entitlement to relief." <u>Id.</u> at 679.

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" <u>Gonzalez v. Kay</u>, 577 F.3d 600, 603 (5th Cir. 2009)(quoting <u>Iqbal</u>, 556 U.S. at 678)(internal quotation marks omitted). "Factual allegations must be enough to

raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

In deciding a motion to dismiss, the Court may consider documents that are essentially "part of the pleadings." That is, any documents attached to or incorporated in the plaintiff's

complaint that are central to the plaintiff's claim for relief. Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004) (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000)).  Also, the Court is permitted to consider matters of public record and other matters subject to judicial notice without converting a motion to dismiss into one for summary judgment.  See United States ex rel. Willard v. Humana Health Plan of Tex. Inc., 336 F.3d 375, 379 (5th Cir. 2003).

## II. Discussion

John Deere contends that several of Servicios's claims should be dismissed for failure to state a claim upon which relief can be granted.  Specifically, John Deere asserts that (1) the Louisiana Dealer Agreement Act applies to Louisiana dealers only, (2) any claims for commissions that accrued prior to November 30, 2007 are time barred, and (3) plaintiff fails to allege with enough specificity a claim for an accounting.  The Court agrees but only in part.

*A.*

As a threshold matter, plaintiff asserts that the defendant's current motion should be disregarded, because this is defendant's second Rule 12(b)(6) motion, and Rule 12(g)(2) prohibits successive motions.  Rule 12(g)(2) states that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this

rule raising a defense or objection that was available to the party but omitted from its earlier motion." Rule 12(h)(2) permits a party, however, to assert a defense for failure to state a claim upon which relief can be granted in any pleading permitted under Rule 7(a), a motion for judgment on the pleadings under Rule 12(c), or at trial. See Fed. R. Civ. P. 12(h)(2); see also Fed R. Civ. P. 12(h)(1) (addressing waiver of defenses and conspicuously omitting 12(b)(6) motions). Although John Deere's second Rule 12(b)(6) motion raises new and old entitlements for relief,[1] any error is harmless, where, as here, these additional defenses could have been raised in a Rule 12(c) motion for judgment on the pleadings, which is subject to the same standard of review as a motion to dismiss under Rule 12(b)(6). See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 330 n.8 (5th Cir. 2002) ("Rule 12(b)(6) decisions appropriately guide the application of Rule 12(c) because the standards for deciding motions under both rules are the same."); Cannon v. Sixth Dist. Pub. Defender Office, No. 09-2164, 2010 WL 5855912, at *3 (W.D. La. Oct. 26, 2010) (holding that the defendant did not waive his new defenses by failing to include them in his original Rule 12(b)(6) motion to dismiss, because the

---

[1] In its earlier motion, John Deere argued that Servicios is unable to state a claim under the Louisiana Dealer Agreement Act. See Rec. Doc. 6. The new bases for relief include the assertions that certain claims for past-due commissions are prescribed and that the claim for an accounting lacks specificity.

arguments could have been raised in a Rule 12(c) motion, which is evaluated under the same standard as a Rule 12(b)(6) motion).

*B.*

John Deere correctly asserts that Servicios cannot state a claim under the Louisiana Dealer Agreement Act, because the statute applies to Louisiana dealers only.

The Louisiana Dealer Agreement Act, codified in Section 51:481 of the Louisiana Revised Statutes, prohibits a distributor from terminating, cancelling, failing to renew, or substantially changing the competitive circumstances of a dealership agreement or contract without good cause. La. Rev. Stat. Ann. 51:482(A)(1) (2012). The LDAA, also called the Louisiana Repurchase Act or the Wholesaler Act, mandates that a distributor "repurchase" any equipment it previously transferred to its dealer upon cancellation of a contract. Id. § 51:481. As recognized by the Fifth Circuit:

> [T]he substantive sections of the Repurchase Act embody the Louisiana Legislature's determination ***to protect resident sellers, distributors, and retailers*** (defined in the statute and hereafter referred to as "Dealers") who contract with wholesalers, manufacturers, or distributors (defined by the statute and hereafter referred to as "Agents") from two potential economic risks that the Legislature perceived as likely to result from the superior bargaining power of the Agents. First, Dealers are protected from arbitrary and precipitous termination or cancellation of dealership relationships without being furnished adequate advance notice that specifies good cause and gives the Dealer an opportunity to cure the cause. Second, former Dealers are protected from being left holding large inventories of equipment or spare parts, or both, with no choice but to incur substantial

>economic losses by "fire-sale" dispositions of such assets.

Lake Charles Diesel, Inc. v. General Motors Corp., 328 F.3d 192, 198 (5th Cir. 2003) (emphasis added) (footnotes omitted). Moreover, several courts have repeatedly held that the purpose of the LDAA is to "protect Louisiana dealers." Engines Sw., Inc. v. Kohler Co., 371 F. Supp. 2d 830, 836 (W.D. La. 2005) ("[T]he purpose is to protect Louisiana businesses from retaining unsaleable stock in the event a manufacturer or 'agent' cancels a contractual relationship." (citing Int'l Harvester Credit Corp. v. Seale, 518 So. 2d 1039 (La. 1988))); see also Lake Charles Diesel, 328 F.3d at 199 ("The perspective of the Repurchase Act that emerges from a comprehensive reading of the statute as a whole is one of statutory protection for the benefit of Louisiana Dealers in (1) specified kinds of equipment (2) for use in one of more identified industries."); Cherokee Pump & Equip. Inc. v. Aurora Pump, 38 F.3d 246, 250-51 (5th Cir. 1994) ("Louisiana has an interest [under the LDAA] in protecting all its citizens, both distributors and consumers. It also has an interest in policing to some extent those companies . . . who do business within its borders, who enter into contracts with Louisiana citizens, and who introduce their products into the stream of commerce for end-use here in Louisiana.").[2] Therefore, as a nonresident dealer,

---

[2] The Court notes that the LDAA's limited legislative history, although not binding or very informative, also indicates that the statute is intended to protect Louisiana dealers only. The

Servicios fails to state a claim under the LDAA upon which relief can be granted.

The text of some sections of the LDAA also indirectly reinforces the Court's finding that the statute applies to Louisiana dealers only, and Louisiana principles of statutory construction require that the statute be read *in pari materia*. See La. Civ. Code art. 13 ("Laws on the same subject matter must be interpreted in reference to each other."); Detillier v. Kenner Reg'l Med. Ctr., 2003-3259 (La. 7/6/04); 877 So. 2d 100, 103. For example, Section 51:490 of the LDAA, which delineates the procedure for an inspection of parts when a local dealer returns spare parts to a manufacturer, provides that "the parish sheriff shall be appointed" as the agent of the manufacturer when the manufacturer does not provide its own agent to certify the

---

committee meeting minutes from both the original 1975 enactment of the LDAA and the 1991 amendments discuss the provisions of the LDAA in comparison with similar protective statutes enacted in other states.  See Minutes of House Commerce Committee, Reg. Sess. 19, 22 (June 19, 1991); see also Engines Sw., 371 F. Supp. 2d at 834; see, e.g., Fabrication & Truck Equip., Inc. v. Powell, 96 P.3d 1251, 1255-56 (Or. App. 2004) ("[W]hile the [Washington State Farm Implements Act] is designed as a sort of farm implement dealer 'lemon law,' to protect Washington resident dealers of farm implements, . . . the analogous Oregon provisions are designed to protect only Oregon resident dealers. . . . Thus, plaintiff [a Washington state dealer] was not within the class of persons protected under the Oregon statutes and could not have obtained relief under those statutes.  Given that plaintiff [a Washington state dealer] could not have invoked the Oregon statutes and, concomitantly, that Oregon has no interest expressed in its farm implement dealer statutes or otherwise, in regulating remedies available to nonresident retailers against Oregon wholesalers . . . ." (citations omitted)).

condition of the returned parts.  La. Rev. Stat. Ann. § 51:490(B).  Section 51:487, which specifies the supplemental nature of the LDAA, cross-references the inapplicability of the "provisions of the bulk sales law," referring to the Louisiana Bulk Sales Law, which Louisiana repealed when it adopted the Uniform Commercial Code.  <u>Id.</u> § 51.487; <u>see also</u> David S. Willenzik, Louisiana Secured Transactions § 7:30 (2012-2013 ed.) ("Bulk sales of inventory and equipment in Louisiana previously (prior to January 1, 1992) were subject to the Louisiana Bulk Sales Act.").  These Louisiana-specific provisions also help to understand that the scope of the statute was to be limited to dealers within the state.

    Servicios asserts that John Deere "deliberately put [Servicios] into the position of a Louisiana dealer" because (1) the Venezuelan customer sent payment directly to John Deere in Louisiana, so the payment for equipment never occurred in Venezuela; (2) John Deere's receipt of the purchase price in Louisiana triggered Servicios's right to a commission; and (3) all records of payments were maintained in Louisiana.[3]  In other words, Servicios's commissions were earned and paid in Louisiana; therefore, the argument goes, Servicios is "like a Louisiana

---

[3] Servicios refers to portions of an "amended complaint" that it has not yet sought leave of Court to file.  Accordingly, the Court disregards any reference or citation to the amended complaint.  This seems to be an opportune time to call to counsels' attention the mandate of 28 U.S.C. § 1927.

11

dealer" and the LDAA should apply.

Notably, Servicios provides no prudential support for its position other than a fanciful argument that the United States and Venezuela Friendship Treaty confers "special protection" upon Venezuelan citizens, and this special protection is broad enough to include substantive rights (rights under the LDAA). Article 13 of the Treaty of Peace, Friendship, Navigation and Commerce states:

> Both the contracting parties promise and engage, formally, to give their special protection to the persons and property of the citizens of each other, of all occupations, who may be in the territories subject to the jurisdiction of the one or the other, transient or dwelling therein, leaving open and free to them the tribunals of justice, for their judicial recourse, on the same terms which are usual and customary with the natives or citizens of the country in which they may be; for which they may employ in defence [sic] of their rights, such advocates, solicitors, notaries, agents and factors, as they may judge proper, in all their trials at law; and such citizens or agents shall have free opportunity to be present at the decisions and sentences of the tribunals, in all cases which may concern them; and likewise at the taking of all examinations and evidence which may be exhibited on the said trials.

Treaty of Peace, Friendship, Navigation and Commerce, U.S.-Venez., Jan. 20, 1836, art. 13, 8 Stat. 466. In sum, Article 13 provides that the courts of both the United States and Venezuela shall be "open and free" to the other's citizens "on the same terms which are usual and customary with the natives or citizens of the country in which they may be." The language of Article 13 appears to give Venezuelan citizens who are physically in the

12

United States the same access to the courts as U.S. citizens; it does not appear to confer a statutory right available to Louisiana dealers only.  See, e.g., James v. Gulf Int'l Marine Corp., 777 F.2d 193, 194 & n.2 (5th Cir. 1985) (addressing a somewhat similar provision in a treaty between the United States and Honduras, and noting that it likely allows Honduran citizens equal access to the courts, but failing to decide the access issue because it was not raised at the trial court level); Buechold v. Ortiz, 401 F.2d 371, 372 (9th Cir. 1968) (holding that the Treaty of Friendship, Commerce, and Navigation between Germany and the United States gives German citizens equal access to the courts but does not create substantive rights);  Morales v. Ford Motor Co., 313 F. Supp. 2d 672, 687 (S.D. Tex. 2004) (finding that the meaning of Article 13 of the United States-Venezuela treaty is that the countries' courts must be open to foreign nationals who happen to be located within the territory of the other); Rivas ex rel. Estate of Gutierrez v. Ford Motor Co., No. 02-676, 2004 WL 1247018, at *8 (M.D. Fla. 2004) (noting that Article 13 of the treaty between the United States and Venezuela provides Venezuelans who are in the United States the same right of access to the courts as U.S. citizens).  Plaintiff points to no other authority in the treaty or instructive case literature as to why Servicios should be treated like a Louisiana dealer, and the Court finds no rational or authoritative reason

to support plaintiff's stretch.  See, e.g., In re Whitaker Constr. Co., 411 F.3d 197, 209 n.4 (5th Cir. 2005) ("It is axiomatic that as an Erie court we attempt to discern how Louisiana's highest court would resolve the issue at hand. . . . It is incumbent upon us to avoid creating new rights and remedies in Louisiana state law where we lack express statutory authority or clear directive from the Louisiana Supreme Court." (citation omitted)).

Accordingly, plaintiff fails to state a claim upon which relief can be granted under the LDAA.

C.

Plaintiff also asserts claims for commissions that became due between 2006 and early 2008.  John Deere counters that any claims for unpaid or underpaid commissions that accrued before November 30, 2007 are prescribed, because under Louisiana Civil Code Article 3494 "[a]n action for the recovery of compensation for services rendered, including . . . commissions" is subject to a three-year prescriptive period.  La. Civ. Code Ann. art. 3494. Therefore, because plaintiff filed the complaint on December 1, 2010, any claims under Louisiana law for unpaid or underpaid commissions that became due before November 30, 2007 must be time barred.  Servicios relies on theories of breach of contract and, therefore, submits that the ten-year prescriptive period of Louisiana Civil Code Article 3499 governs.

The applicable prescriptive period is determined by the character of the action disclosed in the complaint.  See Fishbein v. State ex rel. La. State Univ. Health Scis. Ctr., 04-2482 (La. 4/12/05); 898 So. 2d 1260, 1265.  Under Louisiana Civil Code Article 3499, a personal action (which includes a claim for breach of contract) is subject to a liberative prescription of ten years unless otherwise provided by law.  La. Civ. Code Ann. art. 3499.  An exception to this general rule is found in Louisiana Civil Code article 3494, which subjects claims for the recovery of compensation for services rendered, including the payments of commissions, to a three-year prescriptive period.  La. Civ. Code Ann. art. 3494.  This three-year prescriptive period commences to run from the day payment is "exigible", or exact enough to be demandable.  La. Civ. Code Ann. art. 3495.

In Starns v. Emmons, the plaintiff sued for past-due rent, late fees, and attorney fees under a lease agreement.  538 So. 2d 275, 277 (La. 1989).  The plaintiff argued that

> the inclusion of a demand for rent arrearages in a petition alleging breach of contract does not give the suit the character of an action to recover rent. . . . the applicable prescriptive periods depend on the nature of the action as a whole [and] that because the entire action sounds in contract, the ten year period of article 3499, not the three year prescription of article 3494, should apply.

Id. at 278.  The Louisiana Supreme Court explicitly rejected this line of argument:

> Such a rationale, however, cannot stand, because it

15

>renders article 3494 useless. All of the actions covered by the provisions of that article essentially arise from contractual relationships. Article 3494 does not present a choice between a contract remedy and some other remedy; it merely provides exceptions to the general rule stated in article 3499 that a personal action prescribes in ten years.

Id.

The Louisiana Supreme Court and other courts have repeatedly affirmed this reasoning. For instance, in Grabert v. Iberia Parish School Board, the plaintiffs sued for breach of contract, alleging that the School Board paid them less than they were due under the appropriate salary index. 93-2715 (La. 7/5/94); 638 So. 2d 645, 646. Plaintiffs argued that article 3494's three-year prescriptive period for past wages was not applicable "because their action for breach of contract [was] distinguishable from a claim for past due wages." Id. Again, the Louisiana Supreme Court rejected this reasoning, stating that "[a] petition claiming breach of contract by the payment of wages less than what is due and seeking judgment for the underpaid wages is clearly a cause of action asserting the right to recover unpaid wages." Id. The court went on to reason that "[b]reach of contract is not a free standing cause of action. It is a legal premise, or principle, which gives rise to the right to claim some substantive remedy of law. Here that remedy is the recovery of past due wages." Id. Put in perhaps a more instructive way, substance prevails over form.

In this case, John Deere's alleged failure to pay the full and proper compensation for services rendered gives rise to the action for breach of contract, for which the remedy is recovery of commissions. The complaint expressly states "Deere unilaterally and wrongfully reduced Plaintiffs' commission from 20% to 10%," and that "Deere refused to pay the additional 10% due under the oral contract." The Court finds that the three-year prescriptive period of article 3494 applies.

Moreover, Servicios's reliance on <u>Babkow v. Morris Bart, P.L.C.</u> is misplaced. 98-0256 (La. App. 4 Cir. 12/16/98); 726 So. 2d 423. At issue in <u>Babkow</u> was a letter written by a law firm, promising a chiropractor who treated the firm's client that the firm would "protect" chiropractor's charges out of expected proceeds. <u>Id.</u> at 424-25. Initially, the trial court deemed this letter to be a suretyship agreement and applied the three-year prescriptive period of article 3494. <u>Id.</u> at 425. The state appellate court, however, noted that the plaintiff may be able to prove that this letter is a contract and therefore the ten-year prescriptive period of article 3499 should apply. <u>Id.</u> at 426, 429. The court held that when there are "two possible constructions, the one that favors maintaining, as opposed to barring, an action should be adopted." <u>Id.</u> at 429 (citing <u>Bustamento v. Tucker</u>, 607 So. 2d 532 (La. 1992)). The appellate court then reversed and remanded the case to the trial court to

17

determine whether the letter was a contract.  Id.

The Court here finds that the alleged contract between John Deere and Servicios does not have more than one possible "construction" as in Babkow.  As previously mentioned, Servicios's complaint charges that John Deere breached the contract by failing to pay the full 20% commission rate, and Servicios is seeking judgment for the payment of underpaid commissions.  "The nature of the claim (for underpaid [commissions]) is not something different because it arises out of breach of contract."  Grabert, 638 So. 2d at 646.  Accordingly, the applicable prescriptive period here for underpaid commissions is three years under article 3494, and any claims accruing before November 30, 2007 are therefore time barred.  See Basco v. Wal-Mart Stores, No. 00-3184, 2003 WL 21219026, at *1 (E.D. La. May 20, 2003); Hughes v. Provident Life & Accident Ins. Co., No. 97-2644, 1998 WL 157350, at *1-2 (E.D. La. Apr. 3, 1998); Starns, 538 So. 2d at 277-78; Achord v. City of Baton Rouge, 489 So. 2d 1373 (La. App. 1 Cir. 1986).

*D.*

Last, John Deere contends that Servicios has failed to plead with enough specificity a claim for an accounting and, therefore, Servicios fails to state a claim upon which relief can be granted.  In the alternative, John Deere requests for a more definite statement under Rule 12(e).

According to Rule 8 of the Federal Rules of Civil Procedure, a complaint need only recite "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8 sets out a "low bar" to evaluate the sufficiency of the claim, requiring only that a plaintiff's pleadings "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Gen. Elec. Capital Corp. v. Posey, 415 F.3d 391, 396 (5th Cir. 2005 (internal quotation marks omitted).

Here, Servicios's complaint alleges that it is owed an accounting under "both Louisiana and Venezuelan law." In its opposition memorandum, Servicios states that this claim is based on its oral contract with John Deere. The Court agrees that Servicios's claim for an accounting is rather inartful, vague, and ambiguous; however, because Servicios has not previously amended its complaint, given our loose pleading standards in cases such as this, the Court will permit plaintiff to provide a more definite statement with regard to the claim for an accounting. According to Rule 12(e), failure to provide such a statement within 14 days of this Order may result in the Court striking the pleadings or issuing any other appropriate order. Fed. R. Civ. P. 12(e).[4]

---

[4] The Court notes that a conflict-of-laws analysis is not necessary based on the defendant's assertions in this motion. Because Venezuelan law does not have a comparable statutory remedy, there is no conflict on which law governs as to this claim. When, and if, the parties contest the breach of contract

New Orleans, Louisiana, February 6, 2013

_____
                  MARTIN L. C. FELDMAN
              UNITED STATES DISTRICT JUDGE

---

issues, the Court will then address choice of law.